JOHN W. HUBER, United States Attorney (#7226)
CARL D. LESUEUR, Assistant United States Attorney (#16087)
AARON CLARK, Assistant United States Attorney (#15404)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682
Email: carl.lesueur@usdoj.gov



IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES OF AMERICA, | Case No. 2:19-cr-190-CW |
|---|---|
| Plaintiff, | **SUPERSEDING INDICTMENT** |
| vs. | VIOS. |
| JEFFERSONKING ANYANWU, DANIEL NEGEDU, ONORIODE KENNETH ADIGBOLO, CHUKWUDI KINGSLEY KALU, RICHARD UKOREBI, DAVID MADUAGU, GODSENT NWANGANGA, and ADRIANNA SOTELO, | COUNT 1: 18 U.S.C. § 1349 (Conspiracy to Commit Mail Fraud); COUNTS 2-4: 18 U.S.C. § 1341 (Mail Fraud); COUNT 5: 18 U.S.C. § 1956 (Conspiracy to Commit Money Laundering); COUNTS 6-12: 18 U.S.C. § 1957 (Money Laundering). |
| Defendants. | Judge Clark Waddoups |

The Grand Jury Charges:

At all times relevant to this Indictment,

1. The Defendants conspired with each other and others known and unknown to the grand jury (the "Unnamed Coconspirators") to devise a scheme and artifice to defraud victims they found on the internet. The Defendants and their Unnamed

Coconspirators' scheme primarily targeted widowed women above the age of sixty-five. Over approximately two years, they funneled more than $6 million through accounts they controlled in furtherance of the scheme. It was part of the scheme and conspiracy that the Defendants and their Unnamed Coconspirators would (i) use fake social media profiles to befriend potential victims, (ii) open accounts at financial institutions for the purposes of receiving fraudulent funds, (iii) use false pretenses to entice and pressure their victims to send Defendants money through the mail, wire transfers, checks, or deposits into Defendants' accounts at local branches of the financial institutions, and, finally, (iv) engage in a series of subsequent transactions with the cash in order to send the cash to their own accounts and their coconspirators' accounts in a manner that would disguise the origins of the funds and promote the operation of the conspiracy, often sending significant sums overseas.

2. In the typical execution of the scheme, the Defendants and their Unnamed Coconspirators would create a fake online personality on a social media website or dating application, befriend a woman through that website, and convince the woman that the fake persona had some urgent financial need. For example, Defendants would present that financial need as a family member with emergency medical costs, a United States military member stranded overseas, or as a unique investment opportunity or urgent need to purchase equipment for a business.

3. After presenting the false financial need, the Defendants and their Unnamed Coconspirators would then ask the victims to send money for these false purposes. The Defendants' and their Unnamed Coconspirators would provide the victims with the

Defendants' bank account information or addresses. The victims would be instructed to wire money to the accounts through their bank, use wire remittance providers, go to a local branch to deposit cash or checks to the accounts, or to send cash, checks, or money orders to the addresses provided by the Defendants and their coconspirators. Although the Defendants and their coconspirators primarily employed these "romance schemes" targeted at widows over the age of sixty-five, they also employed other schemes, including but not limited to falsely posing as a lending business and inducing victims to send upfront financing costs to Defendants' and their accounts, or falsely impersonating federal law enforcement agents to demand immediate payment of overdue tax liabilities or other penalties upon threat of imminent imprisonment.

4. Once the Defendants received the money in their accounts, they would transfer the money to each other and to accounts overseas, withdraw the money as cash, or use the money for personal consumption.

5. Through this scheme and conspiracy, the Defendants and their Unnamed Coconspirators defrauded dozens of victims out of millions of dollars, which they laundered through accounts under the Defendants' control.

6. For example, they fraudulently obtained and laundered money from the following victims in the following manner:

   a. Defendants and their Unnamed Coconspirators contacted C.S., a seventy-five-year-old, on social media by an individual using the profile "Aaron.Brain" who claimed to be a businessman living in Germany. "Brain" provided photos and discussed his business, claiming he was

    involved in a business venture supplying pipe for a sewer in Turkey. "Brain" provided photographs of industrial pipes in a warehouse. He told C.S. she could make $600,000 in his business venture. He convinced her to send ten checks totaling $275,000 and five wire transfers totaling $81,000, all between 4/2/2018 and 5/17/2018. She sent the checks and wired the money according to instructions provided by Defendants and their Unnamed Coconspirators through the "Aaron Brain" account, using interstate communications. Six of the checks were mailed from outside the District of Utah to individuals located in the District of Utah: Defendants DANIEL NEGEDU, JEFFERSONKING ANYANWU, ONORIODE KENNETH ADIGBOLO, and CHUKWUDI KINGSLEY KALU.

b. Defendants and their Unnamed Coconspirators befriended V.B. through a popular online dating application by using a profile pretending to be a male with a Facebook profile "Rogio.Papinto.583" for future communications. Using interstate communications, they convinced V.B. that "Rogio" had a successful business in Utah and that DANIEL NEGEDU and CHUKWUDI KINGSLEY KALU were his business associates. "Rogio" provided her a copy of a fake State of Utah business license to show he was a legitimate businessmen, and a fake check showing a payment of $1,900,800 to his business, all to provide V.B. the false impression that "Rogio" had a very successful, legitimate business. The Defendants and their Unnamed Coconspirators convinced V.B. to wire money to CHUKWUDI KINGSLEY

4

KALU under the false pretense that it would be used as an investment in the business.

c. Defendants and their Unnamed Coconspirators used the name of a U.S. military general whose initials are S.T. to befriend N.W, a seventy-four-year-old woman, through social media. Through the S.T. persona they pretended to be a high ranking officer at Ft. Bragg who was deployed overseas. They claimed to N.W. through interstate communications that S.T. had a "portfolio" that was restricted due to customs fees and that he needed her assistance to get his "portfolio" released. They instructed N.W. to send checks made out to Defendants DANIEL NEGEDU, ONORIODE KENNETH ADIGBOLO, GODSENT NWANGANGA, and CHUKWUDI KINGSLEY KALU. The address they provided N.W. for purpose of mailing the checks was an address for DANIEL NEGEDU in Vineyard, Utah, and other locations. N.W. sent approximately $140,150 to DANIEL NEGEDU, ONORIODE KENNETH ADIGBOLO, GODSENT NWANGANGA, and CHUKWUDI KINGSLEY KALU as she was instructed. Defendants and their Unnamed Coconspirators used accounts at financial institutions to deposit and receive those funds and then engage in further transactions and withdrawals with those funds.

d. Using the name "John Brown," the Defendants and their Unnamed Coconspirators befriended D.J., a sixty-nine-year-old-woman, through a social media account. Brown claimed he was in Sweden under house arrest

for failure to pay taxes while he was working on a job in Houston, Texas. He claimed it was a big misunderstanding and that he needed money to pay his lawyer. He provided D.J. with payment instructions using interstate wire communications. Those payments – totaling $112,500 – were received and deposited into Defendant JEFFERSONKING ANYANWU's accounts at financial institutions for the purpose of enabling further transactions with and withdrawals of those funds.

e. Again using the name of a United States military general whose initials are S.T., Defendants and their coconspirators contacted S.L., a seventy-six-year-old widow, through a social media application over interstate wires. S.T. claimed he was a U.S. Army General in Syria, but he couldn't get military transport out of Syria. He told her he needed $50,000 to fly out on a jet specially equipped with bomb or missile detection. He directed her to send a total of $50,000 in checks to Defendants DANIEL NEGEDU and JEFFERSONKING ANYANWU (or to his dba name, "Royalty"), and to another person who has engaged in multiple financial transactions with several of the Defendants.

f. Using the name "William Christopher," Defendants and their coconspirators befriended P.D., a fifty-seven-year-old woman, through a social media application through interstate wire communications. They claimed to P.D. that Christopher was an engineer working as a subcontractor for a large oil company, and assigned to work in Oman. After establishing an online

6

relationship, Christopher began requesting that P.D. send money to help finance purchase of equipment for the project he was working on. P.D. sent the money according to his instructions, which was received and deposited into accounts for Defendant JEFFERSONKING ANYANWU and CHUKWUDI KINGSLEY KALU, who both used accounts at financial institutions to receive the funds and engage in subsequent transactions with the funds.

g. Claiming to be a Brigadier General in the United States military whose initials are G.G., Defendants and their coconspirators befriended J.D., a seventy-five-year-old woman, on social media using interstate wire communications. Defendants and their coconspirators told J.D. that G.G. was a U.S. General in Syria and that he needed the money for the purpose of releasing a "portfolio" which was held up in customs. G.G. asked her to mail $90,000 in cash to "Raymond Maxwell" at an address associated with Defendant ONORIODE KENNETH ADIGBOLO in Pleasant Grove, Utah, which she did on or about April 1, 2019.

h. Claiming to be an oil rig supervisor named "Michael Osborne" in order to befriend victim S.S. and convince of a romantic interest, Defendants and their Unnamed Coconspirators convinced S.S. to send money by mail to Defendant DAVID MADUAGU under the false pretense that it was to help finance various types of parts and machinery for the oil rig business of "Michael Osborne." As a result of their fraudulent misrepresentations, on or

7

about April 27, 2018, S.S. sent a check for $21,000 to the District of Utah that DAVID MADUAGU received from the Postal Service.

i.  Claiming to be a "Hard Money Lender" on a social media application, Defendants and their Unnamed Coconspirators contacted victims C.H. and T.H. about using private financing to purchase homes C.H. and T.H. had under contract. The victims were directed to wire DAVID MADUAGU funds for "Robert Shelton" to cover transaction costs and secure the private financing. DAVID MADUAGU received a total of $18,085.00 between the dates of April 5, 2018 through April 19, 2018 from C.H. and T.H.

j.  Claiming to be "Alexander Richard Amato" on a religious dating site, the Defendants and their coconspirators engage in correspondence with victim N.L., a fifty-two-year-old woman. Amato claimed to have lost his wife to cancer and had two children in private school in California. Since August 2018, N.L. and Amato have corresponded, nearly daily on a basis, and have shared photos and intimate details of their lives. N.L. never met Amato because he purportedly worked on an oil rig overseas. Towards the beginning of their relationship, N.L. sent smaller sums of money to cover things like Amato's children's education expenses. Pursuant to instruction from Defendants and Unnamed Coconspirators, on October 11, 2018, N.L. wired $70,000 in proceeds from her retirement account, to ADRIANNA SOTELO at Amato's direction for the purposes of purchasing oil rig equipment for Amato's rig, which had supposedly exploded.

k. Claiming to represent "Marathon Drilling Company," Defendants and their coconspirators contacted D.W., a seventy-six year old woman, in May 2019 about a potential capital investment in oil drilling. Defendants and their coconspirators represented that D.W. could make a 21% return within two months. On or about May 13, 2019, D.W. wired the money to an account for "Raymond Maxwell." The funds were subsequently transferred from the Raymond Maxwell account to an account for Defendant RICHARD UKOREBI.

## COUNT I
### 18 U.S.C. § 1349
### (Conspiracy to Commit Mail Fraud)

7. Paragraphs 1 through 6 are incorporated as though fully repeated and realleged herein.

8. From on or about a date unknown to the Grand Jury, but believed to be on a date beginning no later than on or about May 11, 2017 and continuing to a date unknown to the Grand jury that is believed to end no earlier than on or about April 1, 2019, in the District of Utah and elsewhere,

**JEFFERSONKING ANYANWU,**
**DANIEL NEGEDU,**
**ONORIODE KENNETH ADIGBOLO,**
**CHUKWUDI KINGSLEY KALU,**
**RICHARD UKOREBI,**
**DAVID MADUAGU,**
**GODSENT NWANGANGA,**
**and**
**ADRIANNA SOTELO,**

9

Defendants herein, agreed with each other and other Unnamed Coconspirators, to commit the following offense: They devised and intended to devise a scheme and artifice to defraud another by means of false and fraudulent pretenses and for obtaining money by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice and attempting to do so caused mail matter to be sent by the United States Postal Service, in violation of Title 18, United States Code, Section 1341.

9.     It was part of the conspiracy that from in or about a date no later than May 2017 and continuing until a date no earlier than April 2019, the Defendants opened bank accounts at various financial institutions and directed others to do so.

10.    It was further a part of the conspiracy that Defendants provided the details of those bank accounts to each other and their Unnamed Coconspirators, for the purpose of receiving the fraudulently obtained funds and engaging in further transactions with those funds.

11.    It was further a part of the conspiracy that Defendants and their Unnamed Coconspirators directed victims to send money by: (a) checks, cash, and money orders sent by mail to addresses for premises that Defendants controlled or had access to, (b) by wire transfer from an out-of-state bank account or to the accounts opened by the Defendants and their Unnamed Coconspirators in the District of Utah; or (c) by deposits made at teller counters at out-of-state branches of the financial institutions to the Defendants' accounts in the District of Utah.

12.    It was further a part of the conspiracy that Defendants and their Unnamed

Coconspirators would retain a portion of the fraudulently obtained money to be spent in transactions in the United States, transmit a portion to overseas accounts for Defendants' and Unnamed Coconspirators' family members and alter ego businesses;

all in violation of Title 18, United States Code, Section 1349.

## COUNTS II through IV
18 U.S.C. § 1341
(Mail Fraud)

13. Paragraphs 1 through 6 are incorporated as though fully repeated and realleged herein.

14. From on or about a date unknown to the Grand Jury, but believed to be on a date beginning no later than on or about May 11, 2017 and continuing to a date unknown to the Grand jury that is believed to end no earlier than on or about April 1, 2019, in the District of Utah and elsewhere,

**JEFFERSONKING ANYANWU,
DANIEL NEGEDU,
ONORIODE KENNETH ADIGBOLO,
CHUKWUDI KINGSLEY KALU,
RICHARD UKOREBI,
DAVID MADUAGU,
GODSENT NWANGANGA,
and
ADRIANNA SOTELO,**

Defendants herein, with the intent to defraud, knowingly devised and willfully participated in the scheme and artifice to defraud that is described above to obtain money by materially false and fraudulent pretenses, representations, and promises.

15. On or about the dates set forth below, in the District of Utah and elsewhere,

for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, Defendants and their coconspirators knowingly caused to be delivered by mail, and received from the mail, the matters described below, each mailing constituting a separate count:

| COUNT | DATE | MAIL MATTER |
|---|---|---|
| II | March 22, 2019 | A package addressed to "Raymond Maxwell" at an address associated with ONORIODE KENNETH ADIGBOLO sent from victim S.K. and containing approximately $97,000 in cash |
| III | April 1, 2019 | A package addressed to "Raymond Maxwell" at an address associated with ONORIODE KENNETH ADIGBOLO sent from victim J.D. and containing approximately $90,000 in cash |
| IV | May 10, 2019 | An envelope or parcel addressed to "Raymond Maxwell" at an address associated with RICHARD BASSEY UKOREBI containing a cashier's check in the amount of $23,500 sent by victim D.W. |

all in violation of Title 18, United States Code, Section 1341.

## COUNT V
18 U.S.C. § 1956(h)
(Conspiracy to Launder Monetary Instruments)

### THE CONSPIRACY

16.   Paragraphs 1 through 6 are incorporated as though fully repeated and realleged herein.

17.   From a date unknown to the Grand Jury, but believed to be no later than on or about May 11, 2017, in the District of Utah and elsewhere,

**JEFFERSONKING ANYANWU,
DANIEL NEGEDU,**

ONORIODE KENNETH ADIGBOLO,
CHUKWUDI KINGSLEY KALU,
RICHARD UKOREBI,
DAVID MADUAGU,
GODSENT NWANGANGA,
and
ADRIANNA SOTELO,

Defendants herein, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 and Section 1957, to wit:

(i) to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument or funds involving the proceeds of specified unlawful activity, that is, bank fraud and mail fraud in violation of Sections 1341 and 1344 of Title 18 of the United States Code, from a place in the United States to or through a place outside the United States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i); and

(ii) to knowingly engage and attempt to engage in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is the fraudulently obtained proceeds identified in Counts 2 through 6 below, such property having

been derived from a specified unlawful activity, that is, bank fraud and wire fraud in violation of Sections 1341 and 1344 of Title 18 of the United States Code, in violation of Title 18, United States Code, Section 1957;

all in violation of Title 18, United States Code, Section 1956(h).

## MANNER AND MEANS

18. The manner and means used to accomplish the objectives of the conspiracy included, among others, the following transactions, each transaction also being an overt act in furtherance of the conspiracy:

   a. Transactions moving money from inside the United States to outside the United States, including but not limited to:

   i. A May 2, 2018 wire of $9,970 from CHUKWUDI KINGSLEY KALU's account at a financial institution in the District of Utah to an account at First City Monument Bank in Nigeria using proceeds fraudulently obtained from V.B. and V.F.;

   ii. An April 13, 2018 wire of $12,533 from an account at a financial institution in the District of Utah in the name of Defendant DANIEL NEGEDU to an account at First City Monument Bank in Nigeria using proceeds fraudulently obtained from S.L.;

   iii. A May 1, 2018 wire of $1,150 from an account at a financial institution in the District of Utah in the name of Defendant ONORIODE KENNETH ADIGBOLO to an account at First City

Monument Bank in Nigeria using proceeds fraudulently obtained from C.S.;

 iv. An April 24, 2018 wire of $42,470 from an account at a financial institution in the District of Utah in the name of Defendant JEFFERSONKING ANYANWU to an account at First City Monument Bank in Nigeria using proceeds fraudulently obtained from D.J.;

 v. An April 19, 2018 wire transfer of $11,185 from CHUKWUDI KINGSLEY KALU's account in Utah to an account at First City Monument Bank in Nigeria using funds fraudulently obtained from P.K. and J.T.O.;

b. Transactions involving criminally derived property of a value of greater than $10,000, including but not limited to:

 i. An April 19, 2018 wire transfer of $14,327 from DANIEL NEGEDU's account in Utah to First City Monument Bank in Nigeria using funds fraudulently obtained from S.L.;

 ii. A May 11, 2018 wire transfer of $12,515 from ONORIODE KENNETH ADIGBOLO's account in Utah to a Bank of America account in North Carolina using funds fraudulently obtained from C.S.;

 iii. An April 24, 2018 wire transfer of $42,470 from JEFFERSONKING ANYANWU's account in Utah to First City Monument Bank

      account in Nigeria using funds fraudulently obtained from D.J.;

   iv. An April 19, 2018 wire transfer of $11,185 from an CHUKWUDI KINGSLEY KALU's account in Utah to First City Monument Bank in Nigeria using funds fraudulently obtained from P.K. and J.T.O.;

   v. A May 9, 2018 cash withdrawal of $15,000 from GODSENT NWANGANGA's Chase account using funds fraudulently obtained from N.W. and M.N.

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS VI through XII**
18 U.S.C. § 1957
(Money Laundering)

  19. Paragraphs 1 through 6 above are incorporated as though fully repeated and realleged herein.

  20. On or about the dates set forth below, in the District of Utah, and elsewhere, the Defendant identified below, did knowingly engage and attempt to engage in the following monetary transactions by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the transactions indicated below, such property having been derived from a specified unlawful activity, that is wire fraud and bank fraud in violation of Title 18, United States Code, Sections 1341 and 1344, all in violation of Title 18, United States Code, Sections 1957 and 2, each transaction constituting a separate count:

| COUNT | DEFENDANT | DATE | MONETARY TRANSACTION |
|---|---|---|---|
| VI | **DANIEL NEGEDU** | April 19, 2018 | Wire transfer of $14,327 from DANIEL NEGEDU's account in Utah to First City Monument Bank in Nigeria using funds fraudulently obtained from S.L. |
| VII | **ONORIODE KENNETH ADIGBOLO** | May 11, 2018 | Wire transfer of $12,515 from ONORIODE K. ADIGBOLO's account in Utah to Bank of America account in North Carolina using funds fraudulently obtained from C.S. |
| VIII | **JEFFERSONKING ANYANWU** | April 24, 2018 | Wire transfer of $42,470 from JEFFERSONKING ANYANWU account in Utah to First City Monument Bank account in Nigeria using funds fraudulently obtained from D.J. |
| IX | **CHUKWUDI KINGSLEY KALU** | April 19, 2018 | Wire transfer of $11,185 from CHUKWUDI KINGSLEY KALU's account in Utah to First City Monument Bank in Nigeria using funds fraudulently obtained from P.K. |
| X | **GODSENT NWANGANGA** | May 9, 2018 | Cash withdrawal of $15,000 from GODSENT NWANGANYA's Chase account using funds fraudulently obtained from N.W. |
| XI | **ADRIANNA SOTELO** | October 15, 2018 | Wire transfer of $15,000 from ADRIANNA SOTELO's Chase account to JEFFERSONKING ANYANWU's Mountain America Credit Union account using funds fraudulently obtained from N.L. |
| XII | **RICHARD UKOREBI** | May 13, 2019 | Wire transfer of $17,900 from "Raymond Maxwell's" Wells Fargo account to RICHARD UKOREBI's Wells Fargo account using funds fraudulently obtained from D.W. |

//

//

## NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any offense in violation of 18 U.S.C. § 1349 or 18 U.S.C. § 1341, the defendant(s) shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the scheme to defraud. The property to be forfeited includes, but is not limited to, the following:

- $32,739;
- 2013 Lexus GS 350, VIN: JTHCE1BL9D5015924;
- A money judgment equal to the value of any property, real or personal, constituting or derived from proceeds traceable to the scheme to defraud and not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p); and
- Substitute property as allowed by 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p).

Pursuant to 18 U.S.C.§ 982(a)(1), upon conviction of any offense in violation of 18 U.S.C. § 1956(h) and/or 1957, the defendants shall forfeit to the United States of America any property, real or personal, involved in the money laundering charges, and any property traceable to such property. The property to be forfeited includes, but is not limited to the following:

- $32,739;
- 2013 Lexus GS 350, VIN: JTHCE1BL9D5015924;
- A money judgment equal to the value of all property involved in the money laundering charges and not available for forfeiture as a result of any act or

omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p).

- Substitute property as allowed by 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p).

A TRUE BILL:

_____
FOREPERSON OF GRAND JURY

JOHN W. HUBER
United States Attorney

_____
Carl D. LeSueur
Assistant United States Attorney